21-10771 Palm Beach County et al versus Federal Aviation Administrator. 21-10771 Palm Beach County et al versus Federal Aviation Administrator You can begin when you're ready, Council. Thank you, Your Honor. May it please the Court, my name is Stephen Ossett for Petitioner, Palm Beach County and I'm also authorized to argue on behalf of the co-petitioner, the City of Atlantis. The county operates a system of four airports which include the Palm Beach International Airport from just six miles to the south, the Palm Beach County Park-Lantana Airport. For nearly 50 years, the county has maintained Lantana as a small airport that's been primarily dedicated to flight training and recreational flying and which has remained closed to all jet aircraft. Therefore, what, therefore what, Council of Latches, Statute of Limitations, what are we talking here? No, Your Honor. You've been getting away with it. Their position is you've been getting away with it for 50 years, somebody's finally complained, no more. Well, Your Honor, the county hasn't simply gotten away with it. The county has maintained that jet restriction with the FAA's knowledge and concurrence. The FAA has... Not all the way up the FAA's chain of command and even if you had, so what? Are they estopped? Have you met the equitable requirements of estoppel, the doctrine of estoppel? They are not estopped, Your Honor. The problem is your practice is contrary to the specific language, specific language of the grant applications. And now you come in and say, but gosh, we've been doing it for so long. We ought to be given free hand to continue doing it. Well, Your Honor, a few points in response. First, I would argue that the jet restriction is not counter to the specific language of the grant assurances because the grant assurances in paragraph 22i specifically permit an airport sponsor to maintain a restriction that is justified for safety and efficiency purposes. The county has repeatedly defended its jet restriction for safety and efficiency purposes and the FAA has had the opportunity to overrule that justification but has declined to do so. It seems to me like it's done so in this instance by saying you haven't shown that. It has, Your Honor, but that brings me back to the point about there being 50 years of the contrary. When the agency is going to change its mind and rely on new factual findings that contradict its earlier positions, then the Administrative Procedure Act requires that it provides a detailed justification. And here, the only analysis of safety and efficiency that's in the record of this closed record proceeding is the Southern Region's initial analysis, which was conducted under Part 13, which was not only inadequate, but which was ultimately ignored by the Associate Administrator. But you haven't shown that it was required by safety and efficiency. And about your argument about the grant, isn't it clear that it said the following use restrictions for Lantana Airport shall be enforced in accordance with the interlocal agreement, pure turbojet aircraft and the heavy 12,500 pounds plus? And you're saying, no, no, no, we'd prefer to ban all jets, not just turbojets. Your Honor, the county has maintained the jet restriction as a complete restriction on jets ever since 1973. And that fact is- But since 1998, at the least, it's been contrary to the grant application, hasn't it? No, Your Honor. I believe the county has maintained the jet restriction in precisely the same manner since 1973. I know, but you haven't been permitted to under those two grants that you were given. It says pure turbojet aircraft, and you said we'd prefer just to ban all jet aircraft. Your Honor, I'm not sure that the interlocal agreement that you're referring to is not the grant. The county has received numerous grants, a grant every year since the AIP program was founded. And it has continuously, during that time, maintained the jet restriction as a total ban on all jet aircraft. The FAA has been aware of the jet restriction being enforced as a total ban on all jet aircraft. And under FAA precedent, it never looks to the literal language of a sponsor's restriction. It always looks to see how that restriction is enforced. And there's no dispute that it's always been enforced as a total ban on all jet aircraft. Here, Your Honor, the Southern Region summarily stated in its Part 13 determination that jets could safely operate on one runway. But that statement, that summary statement, was directly at odds with the FAA's earlier statement in 2001, where the airport traffic control tower manager found that allowing on the efficiency of airspace in and around Lantana. The county had to ask for the supporting evidence for that summary statement. And the only thing that it received in response was verbal advice from the Palm Beach County Tower that jets could safely operate on one of the runways, and a bizarre airspace determination that was in fact dated after the date of the Southern Region's analysis. And that determination stated only that flight standards does not object provided jets can be operated safely, but it contained absolutely no analysis whatsoever of whether jets could be operated safely. Moreover, the associate administrator ignored even that summary determination and said, without citing any evidence in the record of the close record proceedings, that the aircraft as to the two runways that the Southern Region agreed would impact the safety and efficiency of Lantana and the surrounding airspace. For those reasons, the associate administrator's decision that the jet restriction was not justified for safety and efficiency purposes falls far short of the substantial evidence standard to which it must be held. The FAA also failed to even consider the efficiency-based arguments of the county as a multi-airport proprietor. The county has maintained the jet restriction as a component of its airport master planning process. In the record is the 1990 master plan and the 2016 update to the master plan. The county has indeed even opened the North County Airport in the 90s specifically to the Jet Reliever Airport for Palm Beach International because jets could not be accommodated at Lantana. And the FAA knows this. They funded these projects continuously over time. But nowhere in the director's determination or the final agency decision is that efficiency-based justification even discussed. The FAA ignored it completely and its failure to consider that important aspect of the problem renders it arbitrary. But these master plans, they change. They evolve over time as air traffic evolves. And as you've indicated, the master plan has been amended to provide some relief when Palm Beach International Airport cannot accommodate all the jets. So if here we have the complainant who, if we determine that he has met his burden, doesn't the burden then shift to the county to say, we actually cannot accommodate jets because of safety, because of efficiency. And don't you have some burden to produce evidence to show that? Well, first of all, Your Honor, the burden is on the complainant to show that it is not justified for safety and efficiency purposes. That's what the FAA held in its final agency decision in Santa Monica. And it's how it has always interpreted the burden when it comes to safety and efficiency-based restrictions. The only evidence that the complainant put forward is the Southern Region's determination. And that simply can't meet the substantial evidence standard. If it had, then perhaps the county would have been required to come forward with additional evidence. But it did in any event because it presented exactly the same arguments on safety and efficiency that the FAA had apparently found acceptable years earlier, in 2001, when the county specifically defended the jet restriction on the basis of maintaining the efficiency of its multi-airport system and ensuring the safety of Lantana itself. Let me ask you, and I'm going to ask you a hypothetical, so I know you disagree with what I'm about to say in the conclusions, but let's say we concluded that the jet restriction was initially adopted as a noise restriction. It was not in effect as of October 1, 1990, and it was not grandfathered. And then we would further agree with the Second Circuit that, with the Friends of East Hampton Airport decision, that because the restriction is not grandfathered, then it's unreasonable. Would we even need to get to your safety and efficiency argument? You would, Your Honor. And the reason why is because under the scenario that you just proposed, the county could in theory be permitted to maintain the jet restriction if it was justified for safety and efficiency purposes. Now under your scenario, we would have to go back to the FAA and comply with the Part the basis of safety and efficiency, but the court should still vacate this final agency decision because, as it stands, it cuts the legs off of the county's ability to do that because the FAA has prejudged whether the safety restriction is justified for safety and efficiency purposes, and it's done it without substantial evidence and in an arbitrary and capricious manner. In the time I have remaining, I want to turn briefly to the ANCA issues because here, one of the reasons why the FAA did not base its safety and efficiency finding on substantial evidence is because it took a shortcut, and it found under East Hampton that the jet restriction was unreasonable per se. FAA lacked jurisdiction to even render that determination in the first place. Part 16 is a process of limited jurisdiction. Section 16.1 narrowly defines its scope. There's no dispute about that, and there is no dispute that the FAA has promulgated an ANCA procedure governing ANCA that it did not follow here. Moreover, even if the FAA had jurisdiction to consider the ANCA issues under the plane meeting of ANCA, the jet restriction was clearly in effect. The FAA has conceded that the county has continuously and effectively prohibited jet aircraft from operating ever since 1973. That alone should be dispositive. The final agency decision relies only on dictionary definitions that make clear that any action which exerts force or influence is an action that can be considered to be operative, to be in effect. And the county has, since 1973, both before and after Ordinance 88-11, has maintained in official regulatory FAA publications that pilots rely on for critical information about the airport that this is an airport closed to jet aircraft. Let me ask you a quick question about the jurisdictional issues. So ANCA-related issues are, in fact, governed by a separate part of the FAA's regulatory scheme, and that is distinct from the type of administrative complaint that forum filed in this case. But to decide if the jet restriction was unreasonable or unjustly discriminatory under the grant assurance, which was an issue before the FAA in this case, the FAA director had to decide if Lantana's jet restriction violated ANCA, right? Not correct, Your Honor. The FAA has always maintained a clear dividing line between ANCA and the grant assurances. And even when ANCA issues have arisen before, it has set the ANCA issues to the side and decided the matter only on the basis of grant assurances. The only explanation that the FAA gives for treating things differently this time around is the Friends of East Hampton case in the Second Circuit, but that case involved a preemption challenge to a restriction. It was not an appeal from a Part 16 determination and cannot be read to have enlarged the FAA's Part 16 restriction. But if this is part of the issue, whether the jet restriction was unreasonable or unjustly undiscriminatory under the grant assurance, and if ANCA comes up, there's nothing in the statute that says, oops, we can't do ANCA under this procedure. We have to move over to the other one. Well, there is, Your Honor. Section 16.1 provides that only the authorities enumerated therein can be subject to a Part 16 proceeding, and ANCA is not included in one of those authorities. Now, if the FAA wanted to base its decision under the ANCA finding, it could have done that, but it needed to have followed its own procedures promulgated under Part 161 to first make the ANCA finding. And then, you know, if it needed to after that, then it certainly could have come back in and held the jet restriction unreasonable per se under grant assurance 22. I'll reserve the balance of my time. Thank you. Thank you. You reserved your three minutes for rebuttal. Attorney for Respondent. Good morning. May it please the Court. I'm Cynthia Barmore here for the FAA. I'd like to emphasize that FAA's decision here rested on several reasonable conclusions. So, first, it is inherently unreasonable to violate federal law, and second, a restriction is not, quote, in effect if it has been affirmatively repealed by the legislature. But even apart from Petitioner's violation of ANCA, FAA offered a second independent basis for its decision, which is that the county's justifications are not supported by any evidence of a safety, maintenance, or noise concern. And this Court can deny the petition for review on either of those grounds. I'd like to respond to a couple points that were raised here. First, Ordinance 8811 really could not be clearer. It, quote, repealed and superseded all airport regulations that were in effect at that time. That would necessarily include the 1973 restrictions. The 8811 Ordinance went a step further, created a comprehensive code for airport regulations, which included a provision to address noise at Lantana that did not include the jet restriction. Additionally, jurisdiction here is proper to consider ANCA. FAA unquestionably had jurisdiction to address the reasonableness of these restrictions under the grant assurances. Nothing in the statute or the regulation precludes FAA from addressing ANCA in that context. I'm happy to answer any questions that this Court has, but we are also happy to rest on the brief. Thank you. Counselor, since you've generously offered us so much time for questions, let me ask you this. As I understand it, your client landed at that airport in his plane twice in 2016? So, I represent the FAA. Next, we'll speak to Mr. Foreman's attorney. Oh, I'm sorry. I'm sorry. You're right. My understanding is he said yes. Yeah, I just couldn't wait to ask that question. So, I'll start first with Mr. Foreman's attorney with that question. Thank you. If this Court has no further questions, we would urge it to deny the petition for review. I do have one question before you sit down. So, you rely on the D.C. Circuit's Millard opinion for your argument that the FAA has jurisdiction in Part 16 to decide ANCA issues, but when I looked at the briefs in the Millard case, it doesn't seem that anybody raised the argument that the FAA lacked jurisdiction to decide those issues. So, if the issue wasn't raised or decided in that case, then can we read anything into that decision that's helpful to you? Your Honor, I don't believe this issue was raised. We're not suggesting that there was a holding from Millard on the jurisdictional issue. We merely raised the case as one data point for this Court that the Court did not see any obvious jurisdictional problem. But really for jurisdiction, what we're relying on is there is no bar in any statute or regulation that precludes FAA from considering ANCA outside of the Part 161 process. So, I would point this Court to the Statute 49 U.S.C. 47122, which broadly authorizes the Secretary of Transportation when reviewing compliance with grant assurances to take any action the Secretary considers necessary. The regulation for Part 16 proceedings provides no limit on what FAA can consider when reviewing reasonableness, and ANCA itself does not limit FAA to evaluating ANCA compliance in only the Part 161 process. So, FAA considers ANCA issues in many different circumstances, not just 161, but also in informal letters when regulated parties may send an inquiry to FAA, FAA will consider ANCA and respond accordingly. It can also respond in the Part 16 process. There's really nothing that requires FAA to turn a blind eye to ANCA in anything apart from 161. Thank you. And one other point I would like to make about Millard is just in response to a point that that petitioners made, it was a Part 13 proceeding because this occurred before Part 16 existed, but at the time Part 13 had a very similar provision to 16.1, which was 13.1 and 13.3, which listed the authorities on which a Part 13 proceeding could be based, which included the AAIA, but did not list ANCA, just like 16.1. Thank you. We'll now hear from the attorney for the intervener, Mr. Armstrong. Good morning. My name is Alan Armstrong. I represent Captain Errol Foreman, who filed the original Part 13 complaint. The question has been raised in this case about whether we carried a burden of proof when we filed our complaint. I want to respond to that very briefly, if I may. First of all, in an email from the public affairs personnel for Palm Beach County, they admitted, number one, there were never any public meetings where the county chairman or members of the county commission discussed a noise contour map. There was never any noise study performed at Palm Beach County, and there were no summary noise complaints for the past five years. Interestingly, when we had our Part 13 case before the southern region, the admission was made by opposing counsel, quote, jets are generally noisier than propeller aircraft, and thus it was reasonable for the county to make the distinction between these types of aircraft for noise abatement purposes. And that's just not true at all. A propeller aircraft can be lighter than a jet airplane. We know that. And that's what the final agency decision found in this ruling. In terms of the specificity with which we alleged our burden of proof, I was very careful in drafting my complaint. I said in paragraph number 20 that the jet ban had been rescinded. And I said in paragraphs 29 through 41 that not only had it been rescinded, but there was no justification for this legally. And I referenced the letter from opposing counsel. I referenced the email admitting that there was no noise study. So under, there's Grant Insurance 22A that says you must not exclude aircraft, and there's Grant Insurance 22I that says there's an exception. If there's safety and efficiency, you may do so. But they couldn't carry that. And I pled that in my complaint. They could not demonstrate safety and efficiency. They had no noise studies. They had no noise contour maps, no safety and efficiency studies. So therefore, I had carried my burden of proof. And that's exactly what the director found in his decision. Accordingly, in this case, Captain Foreman stated a valid prima facie case for Grant Insurance 22 violation based on the allegations of denial of access to Lantana. The Cessna's citation is a turbofan stage three aircraft for noise purposes reflected in Advisory Circular 36-1H, Noise Levels for U.S. Certificated Foreign Aircraft. Captain Foreman was operating a Cessna citation when he landed at L&A, the Lantana airport, and was cited for violations of the county's rules and regulations. So we carried our burden by any standard. And I think that Judge Carnes had a question for me. The question for you, and I don't want to imply that you have to justify this, but in working through this, and it is complicated to someone outside this area of practice, but in working through this, it occurred to me there had been a lot of litigation at the your client had landed at the airport, got cited for it. That's a mighty expensive proving of a point that he can land at that airport. Is there anything in the record to show that more is involved in two landings in May of 2016? No, Your Honor, but may I tell you as an active pilot, I'm required to evaluate whether I can safely land my craft under FAR 91.103. That's 14 CFR 91.103. An airman has the authority and the duty and obligation to make an assessment about whether he can safely land his airplane. Captain Foreman made that assessment, and he landed the aircraft successfully twice. I understand, and people are free to litigate to the point of exhaustion matters of principle. I just wondered if there was something else involved in this, properly, at least implied by the record. Two landings, five and a half, six years ago. Seems like awful. Doesn't seem like it justifies five years of litigation is what I'm saying. And we'll decide the case, and you have every right to be here. I just oftentimes would like to know what's going on behind the administrative statements. And having asked that, and I understand your response. He had a responsibility to determine if he could land safely. He determined he could. The county says he can't. And by gosh, one of them is right, and the other one is wrong. And you have a right to have that litigated. I understand. Oftentimes, I've asked those kind of questions, and one of the attorneys will say, yes, I'll tell you exactly what's going on. And it happened in the preliminary proceedings, and this is what it's about. Or he'll lose his license. Or he might have noticed the attorney's fees provision in the back of the statute, your honor, and so forth and so on. So I understand. I'm happy with your answer. He knows he's right, and the counties are wrong. I've got two more comments very quickly. Number one, we have a national airspace system. And part and parcel of that is the ability of we as airmen to land our airplanes at airports. They're receiving federal funds. They're receiving federal monies. They cannot exclude the aircraft. This aircraft is safer and quieter than other aircraft. There's no rational basis for the rule. And number two, the county doesn't fly the airplane. The pilot does. He makes that assessment. And he made the assessment, and they had no business doing what they did. We request that the final agency decision be affirmed. Thank you. Thank you, Mr. Ossett. You have three minutes for rebuttal. Thank you, your honors. Just a few points on rebuttal. First, counsel for the FAA cited 49 USC 47122 as the statutory basis for its decision under Part 16. 47122 makes clear that the FAA has authority to carry out this subchapter, which is referred to, which is Subtitle 7, Part B, Subchapter 471, Subchapter I. But ANCA is codified in an entirely different chapter completely. It's codified at Subtitle 7, Part B, Chapter 475, let alone a different subtitle. And the ANCA enforcement restrictions were promulgated at Part 161 under the ANCA statute itself. FAA is trying to conflate the two, but the statutory language itself belies the ability to do that. Secondly, Judge Pryor, you asked about Millard. Millard, as FAA counsel acknowledges, was not a Part 16 case at all. So it cannot be read to have required FAA to exercise Part 16 jurisdiction in a way that it simply wasn't empowered to exercise. But what Millard does say is, what Millard does stand for is if an agency, and I'm quoting from the decision here, if the agency does not resolve a dispositive issue properly raised before it, then the court doesn't attempt to review its action because there's nothing to review. Here, the ANCA issue was not properly raised before the FAA. FAA has always held that ANCA needs to be raised under the Part 161 process, and it's not appropriate to be raised under Part 16. Finally, FAA counsel suggested that the text of Ordinance 8811 could not be any clearer. We respectfully disagree. Ordinance 8811 certainly does include the text that on its face purports to supersede and repeal all airport regulations, but 8811 also provided that the director could continue to restrict any flight or other operation. It provided that other ordinances not in conflict with that ordinance should also be enforced at Section 1-4, and it provided that all aeronautical activities should be conducted in conformity with the current provisions of orders of the Department. Those provisions render the effect of 8811 ambiguous, and when the court looks at the actual implementation of the ordinance, it is clear that the county could not have intended to repeal the 1973 jet restriction. It continued to publish notice in FAA publications in a master plan just immediately after the 8811 ordinance was adopted. It maintained the jet restriction. Contemporaneous press reports maintained the jet restriction, and the director of airports from 1985 all the way to 2018 indicated that the jet restriction had been continuously enforced and never it was intended to be repealed. If the panel has no other questions, I thank you for its time. Thank you, counsel. The court will be in recess until 9 a.m. tomorrow morning.